IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

# CASE NUMBER 25-10434

---

## UNITED STATES OF AMERICA,
*PLAINTIFF-APPELLEE,*

## V.

## NAUTICA BLU HAMILTON,
*DEFENDANT-APPELLANT.*

---

ON DIRECT APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

---

## INITIAL BRIEF OF APPELLANT

JASON D. HAWKINS
FEDERAL PUBLIC DEFENDER

KEVIN JOEL PAGE
ASSISTANT FEDERAL PUBLIC DE
FENDER
525 South Griffin
Suite 629
Dallas, Texas 75202
(214) 767-2746

*Counsel for Appellant*

## Certificate of Interested Persons
### *United States v. Nautica Blu Hamilton*, Case No. 25-10434

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| | |
|---|---|
| Appellant: | Nautica Blu Hamilton |
| Defense Counsel: | Federal Public Defender for the Northern District of Texas (appointed)<br>AFPD David Sloan (trial)<br>AFPD Sarah Gunter (trial)<br>AFPD Kevin Joel Page (appeal) |
| Prosecutors: | United States Attorney for the Northern District of Texas<br>AUSA Calandra Woolam (trial)<br>AUSA Stephen Gilstrap (appeal) |
| District Judge: | Hon. James Wesley Hendrix |

/s/ Kevin Joel Page
Counsel for Appellant

i

## Statement Regarding Oral Argument

Although every other federal circuit has held that unconstitutional discrimination at sentencing may be reviewed in spite of an appeal waiver, this Court has not addressed the issue. This squarely presents the issue. Oral argument is merited to address this extremely weighty question.

# Table of Contents

Certificate of Interested Persons.................................................................... i

Statement Regarding Oral Argument ......................................................... ii

Table of Authorities.................................................................................iv

Jurisdictional Statement ........................................................................... 1

Issues Presented for Review ..................................................................... 1

Statement of the Case................................................................................ 2

Summary of Argument............................................................................... 7

Argument and Authorities.......................................................................... 9

I.     The waiver should not bar the appeal.............................................9

II.    The government plainly erred in considering the defendant's sex as an
       aggravating factor when formulating a sentencing recommendation. ........16

Conclusion ............................................................................................... 29

Certificate of Service ............................................................................... 30

Certificate of Compliance ........................................................................ 30

# Table of Authorities

**Page(s)**

**Federal Cases**

*Batson v. Kentucky*,
　476 U.S. 79 (1986)..................................................................12, 17, 28

*Berger v. United States*,
　295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)..........................7, 14

*Bolling v. Sharpe*,
　347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954)................................17

*Buckley v. Valeo*,
　424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976)................................17

*Califano v. Webster*,
　430 U.S. 313, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977) ........................17

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
　473 U.S. 432, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985) .....................7

*Craig v. Boren*,
　429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) ..........................17

*Davis v. Passman*,
　442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979) .....................17

*Davis v. United States*,
　588 U.S. 445, 139 S.Ct. 2319, 204 L.Ed.2d 757 (2019) ....................15

*Hampton v. Mow Sun Wong*,
　426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976)...........................17

*J.E.B. v. Alabama ex rel. T.B.*,
　511 U.S. 127, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994) ......................12, 17, 28

*King v. United States*,
　41 F.4th 1363 (11th Cir. 2022) ..........................................................10

*Mississippi Univ. for Women v. Hogan*,
   458 U.S. 718, 102 S. Ct. 3331, 73 L. Ed. 2d 1090 (1982) ......................8, 20, 21

*Molina-Martinez v. United States*,
   578 U.S. 189, 136 S. Ct. 1338, 194 L. Ed. 2d 444 (2016) ................................26

*Neder v. United States*,
   527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)...........................................27

*Peugh v. United States*,
   569 U.S. 530, 133 S.Ct. 2072, 186 L.Ed.2d 84 (2013)......................................26

*Powers v. Ohio*,
   499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) .............................12, 28

*Rosales-Mireles v. United States*,
   585 U.S. 129, 138 S. Ct. 1897, 201 L. Ed. 2d 376 (2018) ................................28

*Schwartz v. Florida Board of Regents*,
   807 F.2d 901 (11th Cir. 1987) ..........................................................................13

*Skinner v. State of Okl. ex rel. Williamson*,
   316 U.S. 535, 62 S. Ct. 1110, 86 L. Ed. 1655 (1942) ...................................8, 22

*U.S.E.E.O.C. v. County of Calumet*,
   686 F.2d 1249 (7th Cir. 1982) ..........................................................................13

*United States v. Andis*,
   333 F.3d 886 (8th Cir. 2003)(*en banc*) .............................................................10

*United States v. Baramdyka*,
   95 F.3d 840 (9th Cir. 1996) ..............................................................................10

*United States v. Barnes*,
   953 F.3d 383 (5th Cir. 2020) ............................................................................15

*United States v. Baymon*,
   312 F.3d 725 (5th Cir. 2002) ..............................................................................9

*United States v. Bond*,
   414 F.3d 542 (5th Cir. 2005) ..............................................................................9

*United States v. Bownes*,
    405 F.3d 634 (7th Cir.2005) ........................................................10, 12

*United States v. Burns*,
    770 F. App'x 187 (5th Cir. 2019)(unpublished) .................................15

*United States v. Bushert*,
    997 F.2d 1343 (11th Cir. 1993)...................................................10, 11

*United States v. Caruthers*,
    458 F.3d 459 (6th Cir. 2006) ...............................................................10

*United States v. Cockerham*,
    237 F.3d 1179 (10th Cir. 2001) ..........................................................10

*United States v. Dominguez-Benitez*,
    542 U.S. 74, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004) .....................27

*United States v. Elliott*,
    264 F.3d 1171 (10th Cir. 2001)...........................................................10

*United States v. Ford*,
    688 F. App'x 309 (5th Cir. 2017)(unpublished) .................................15

*United States v. Guillen*,
    561 F.3d 527 (D.C. Cir. 2009) ............................................................11

*United States v. Gwinnett*,
    483 F.3d 200 (3d Cir. 2007) ...............................................................10

*United States v. Hahn*,
    359 F.3d 1315 (10th Cir. 2004)(en banc) ....................................10, 11

*United States v. Hicks*,
    129 F.3d 376 (7th Cir. 1997) ........................................................11, 13

*United States v. Jacobson*,
    15 F.3d 19 (2d Cir. 1994) ....................................................................10

*United States v. Johnson*,
    347 F.3d 412 (2d Cir. 2003) ............................................................9, 13

*United States v. Jones,*
   134 F.4th 831 (5th Cir. 2025) ..........................................................15, 16

*United States v. Josefik,*
   753 F.2d 585 (7th Cir. 1985) ................................................................12

*United States v. Leal,*
   933 F.3d 426 (5th Cir. 2019) ..........................................................13, 14

*United States v. Long,*
   722 F.3d 257 (5th Cir. 2013) ................................................................11

*United States v. Marin,*
   961 F.2d 493 (4th Cir. 1992) ..........................................................10, 13

*United States* v. *McKinney,*
   406 F.3d 744 (5th Cir. 2005) ..................................................................9

*United States v. Michelsen,*
   141 F.3d 867. (8th Cir. 1998) ...............................................................11

*United States v. Olano,*
   502 U.S. 725 (1993) ........................................................................16, 27

*United States v. Powell,*
   574 F. App'x 390 (5th Cir. 2014)(unpublished) ...............................15

*United States v. Ready,*
   82 F.3d 551 (2d Cir. 1996) ...................................................................13

*United States v. Rosa,*
   123 F.3d 94 (2d Cir. 1997) ...................................................................10

*United States v. Schmidt,*
   47 F.3d 188 (7th Cir. 1995) ..............................................................9, 10

*United States v. Teeter,*
   257 F.3d 14 (1st Cir. 2001) ................................................................9, 11

*United States v. Trucking Employers, Inc.,*
   561 F.2d 313 (C.A.D.C.1977) .............................................................13

*United States v. Yemitan*,
70 F.3d 746 (2d Cir. 1995) ...............................................................11

*Vance v. Bradley*,
440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979)............................17

*Wade v. United States*,
504 U.S. 181, 112 S. Ct. 1840, 118 L. Ed. 2d 524 (1992) ...........18, 23

*Walley v. Epps*,
No. 4:10CV71-DPJ-FKB, 2013 WL 2389790 (S.D. Miss. May 30,
2013) ...............................................................................12, 17, 23

*Weinberger v. Wiesenfeld*,
420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975) ......................17

*Williams v. Vukovich*,
720 F.2d 909 (6th Cir. 1983) .............................................................13

## State Cases

*Moses v. Burleigh Cnty.*,
438 N.W.2d 186 (N.D. 1989) ............................................................13

## Federal Statutes

18 U.S.C. § 2251(a) ................................................................................2

18 U.S.C. § 3231 ....................................................................................1

18 U.S.C. § 3553(a)(6)..............................................................8, 12, 18

18 U.S.C. § 3742 ....................................................................................1

28 U.S.C. § 994(d) ...................................................................8, 12, 18

28 U.S.C. § 1291 ....................................................................................1

USSG § 5H1.10..........................................................................8, 12, 18

## Rules

Fed. R. App. P. 4(b) ...............................................................................1

Fed. R. Crim. P. 11(c)(1)(B) ......................................................................26

**Constitutional Provisions**

U.S. Const. amend. XIV ............................................................16, 17, 23

U.S. Const. amend. XIV, § 1 ...................................................................16

**Other Authorities**

Jeffrey J. Rachlinski and Magistrate Judge Andrew J. Wistrich,
*Judging the Judiciary by the Numbers: Empirical Research on
Judges* 13 Annual Review of Law and Social Science 17 (2017)......................26

*Restatement (Second) of Contracts* § 178 (1981) ...................................................12

*Restatement (Second) of Contracts* § 178, Comment a ...........................................12

*Restatement (Second) of Contracts* § 205, cmt. a (1981) .......................................14

## Jurisdictional Statement

The district court had original jurisdiction over this case pursuant to 18 U.S.C. §3231. This Court has appellate jurisdiction under 28 U.S.C. §1291 and 18 U.S.C. §3742. The district court entered its written judgment March 6, 2025, (ROA.60), and Appellant filed a timely notice of appeal March 20, 2025, (ROA.67). Fed. R. App. P. 4(b).

## Issues Presented for Review

Whether the government's consideration of sex as an aggravating factor when formulating a sentencing recommendation may be reviewed on appeal in spite of an appeal waiver?

Whether the government may consider the defendant's sex as an aggravating factor when formulating a sentencing recommendation?

## Statement of the Case

### I.    Facts and Proceedings Below

Nautica Blu Hamilton is now a 22-year old woman, with a childhood characterized by profound instability and grotesque neglect and abuse. *See* (Defendant's Motion for Downward Variance, at 2-8). During a period of financial instability (around the time of her 20th birthday), and while suffering in abusive relationship, she worked at a daycare facility. *See* (Defendant's Motion for Downward Variance, at 10-14); (ROA.152). While at that facility, she committed an awful crime: she took sexually explicit photos of two 18-month old children, with the intent to sell them on the internet. *See* (ROA.143). Police caught and arrested her. *See* (ROA.142-143).

The federal government indicted Ms. Hamilton on one count of producing and attempting to produce sexually explicit images of minors, 18 U.S.C. §2251(a). *See* (ROA.8). This offense carried a sentencing range of 15-30 years imprisonment. *See* 18 U.S.C. §2251(a). She pleaded guilty pursuant to a plea agreement. *See* (ROA.124-132). The agreement waived her right to appeal, subject to exceptions for a sentence exceeding the statutory maximum, for ineffective assistance of counsel, for arithmetic error at sentencing, or for an involuntary plea. *See* (ROA.130). As one might expect, the agreement didn't say anything -- either way -- about whether the government could use the defendant's female sex as an aggravating factor when formulating a sentencing recommendation to the district court. *See* (ROA.124-132).

The defense filed a motion for downward variance from the Guideline recommendation of 30 years. *See* (Defendant's Motion for Downward Variance, at 1-20). It provided detailed information about Ms. Hamilton's life history, including her extensive abuse while a child and adult. *See id.* at 2-8, 10-14. The motion argued that this history affected Ms. Hamilton's judgment and mitigated the offense. *See id.*  It did not, however, argue that she should receive a lesser sentence because she was a woman. *See id.*

The government filed a written response, asserting that "[i]f, in fact, Hamilton had been physically and sexually abused as detailed in her motion for a downward variance, it is arguably an aggravating factor…" (Government's Response to Defendant's Motion for Downward Variance, at 3). Of course, it also stressed the seriousness of the offense. *See id*. at 1-14. Discussing the propriety of a 30-year sentence, it argued:

> A sentence of 360 months imprisonment will result in Hamilton, a 21-year-old woman, being released from prison in her early 50s, or late 40s (assuming credit for good behavior). While a sentence of 360 months will still allow Hamilton the opportunity to live as a free woman for much of her adult life, it will hopefully make her criminality more difficult.

(Government's Response to Defendant's Motion for Downward Variance, at 13). On its surface, this statement might be read to say only that a person in prison cannot re-offend. But as will be shown, statements made at sentencing tend to show another meaning: the government formulated its request for 30 years imprisonment in part

to ensure that Ms. Hamilton could not reproduce biologically. The government's sentencing argument, in fact, show that the defendant's sex played an important role in selecting that recommendation.

At the sentencing hearing, the defense reprised its arguments from the Motion for Downward Variance. *See* (ROA.96-103).  Again, however, it did not say that Ms. Hamilton should receive a lesser sentence due to her sex.  *See* (ROA.96-103). The defendant allocuted, and expressed deep remorse; she did not, however, ask for a lesser sentence due to her sex. *See* (ROA.105-106). A parent of the victim discussed the impact of the offense on their family. *See* (ROA.107-108).

The government forcefully repeated its recommendation that the defendant receive 360 months imprisonment and a lengthy term of release. *See* (ROA.109). Its arguments explained the reason for this recommendation, reiterating the position it took in the written filing, but adding two more points. *See* (ROA.109-113). Specifically, it said that the case's "shocking" features made it "more aggravating, not less." *See* (ROA.110).  It then argued that the case was shocking not merely because of the defendant's conduct, but because society expects young women to be more nurturing and caring toward children. *See* (ROA.110). Making, this argument, it explicitly compared the expectations of young women to those of men. *See* (ROA.110).

Further, and expanding on its written filing, it argued that a sentence of 30 years was necessary to make sure that Ms. Hamilton would not be capable of

childbearing at the time of her release from prison. *See* (ROA.112-113). At the conclusion of the argument, the government again requested 360 months "for all of these reasons." (ROA.113).

Although many readers may dislike block quotes, the entire portion of the problematic argument is set forth below in fairness[1] to counsel for the government:

> Your Honor, there is no appropriate sentence in this case other than the statutory maximum of 360 months, followed by a lengthy term of supervised release.
>
> When I think about this case, I think of the phrase, "depraved indifference to human life." And it stood out to me that Ms. Hamilton today essentially said that same thing when she said she did this because she was just thinking about herself. She sexually abused two 18-month-old children because she was thinking about herself, children that she was entrusted to protect through her job as a baby-sitter at the YWCA.
>
> I know it's been graphically detailed, but I have seen the image that she distributed. And Ms. Hamilton admitted that she took similar images of that one with another child. And what this is, is a close-up image of the vaginal area of an 18-month-old child that she fully disrobed and used her fingers to spread apart the vaginal lips of, I guess to make it more sexually appealing in her mind.
>
> The facts of this case are deplorable. **It is one of the most shocking cases that I think I've seen**. And as this Court is aware, I do a lot of the child exploitation cases in this division. **And the reason it's so shocking, I would argue, makes it more aggravating and not less. Of course, the actual facts of what Ms. Hamilton did are horrific.** That is shocking alone, that somebody would take two 18-month-olds; two young, young children that she was entrusted to protect; sexually

---

[1] Also in fairness to counsel for the government, it should be noted that trial counsel for the government handles many cases involving child sexual exploitation, *see* (ROA.110, line 10), and that this represents a profoundly important and difficult public service. The appeal is not intended to impugn the professional integrity of this dedicated public servant. It merely seeks to vindicate an important constitutional protection that appears to have been overlooked under the pressure of a very difficult case.

assault them and then distribute a photo of one in hopes of receiving money, a photo that will now exist on the internet forever, and no telling how many people have shared and distributed it further.

**That's shocking enough. But what makes this more shocking--and we discussed this in length at our response to the defendant's motion for a downward variance. But as a young female, one can already assume that women probably should have a more nurturing, more protective feeling towards children than maybe men do. I think that's a societal assumption. Whether it's true or not, that is probably why, when people go to daycares or hire daycare workers, they think women may be a safer fit.**

**Despite being a young female**, she had no thought but to attempt to make money somehow by sexually abusing these young female children. She was apparently abused herself, something that, again, the research and literature would say makes most abuse victims more protective of children, and more cautious. And despite that, she caused what will probably be life-long issues and implications for these two young children, as well as their families.

* * *

Ms. Hamilton needs to be sentenced to a significant amount of prison time that it will not only afford an adequate deterrence to her and promote respect for the law, but, most importantly, that it would protect the public and children from Ms. Hamilton.

**While I am not going to try to weigh in on female biology and at what point Ms. Hamilton may or may not be able to have children anymore, but by my calculation, at twenty-one years of age today, a 30-year sentence may be the best way to prevent Ms. Hamilton from being able to have her own children** because if she was willing to do this with two children she was protecting, or supposed to be protecting, in her position as a daycare worker, there's no telling what she would do behind closed doors with her own children.

**Your Honor, for all of these reasons, the United States asks for a sentence at the statutory maximum of 360 months**, followed by a lengthy term of supervised release.

Thank you, Your Honor.

(ROA.109-113)(emphasis added).

The district court followed the government's recommendation, imposing the statutory maximum of 360 months imprisonment, plus a ten-year term of release. *See* (ROA.118). It discussed the seriousness of the offense and the need for punishment, which it thought to outweigh the case's mitigating facts. *See* (ROA.114-118).

### Summary of Argument

**I.**  Every other federal circuit has said that a waiver of appeal will not bar review of unconstitutional discrimination at sentencing. *See* Note 2, *infra*. This Court should join that consensus, whether or not it wishes to recognize a general exception for miscarriages of justice. The present case, moreover, provides special reason to reach the merits in spite of a waiver: the government ***itself***, a party to the agreement, engaged in unlawful discrimination in formulating a sentencing recommendation. A defendant executing a plea agreement may reasonably expect that the government will not engage in unlawful discrimination on the basis of gender. *See Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).  In doing so, the government breached a critical implied term of the agreement.

**II.**  "[G]ender … generally provides no sensible ground for differential treatment." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985). Yet the government here explicitly premised its request for a sentence at the statutory maximum on the fact that the defendant is a young woman rather than a man. *See* (ROA.110-111). The rationale it offered for

this differential treatment – that people trust women more than men around children, *see* (ROA.110-111) – is explicitly based on "fixed notions concerning the roles and abilities of males and females." *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 724, 102 S. Ct. 3331, 3336, 73 L. Ed. 2d 1090 (1982). It accordingly does not provide a valid reason for differential treatment. *See Hogan*, 458 U.S. at 724; *see also* 18 U.S.C. §3553(a)(6); 28 U.S.C. §994(d); USSG §5H1.10.

Here, moreover, the equal protection violation was aggravated by the government's argument that the defendant should receive the maximum punishment to prevent her from ever bearing children. *See* (ROA.112-113). That argument implicates equal protection concerns for two reasons. First, it is inextricably bound up with the defendant's sexual biology. It cannot be articulated independent of the defendant's womanhood. Second, as the Supreme Court has long recognized, the constitution takes the power to prevent individual reproduction out of the hands of the government. *See Skinner v. State of Okl. ex rel. Williamson*, 316 U.S. 535, 541, 62 S. Ct. 1110, 1113, 86 L. Ed. 1655 (1942). That power, the Court has recognized, "if exercised, may have subtle, farreaching and devastating effects," including grave problems of racial discrimination. *Skinner*, 316 U.S. at 541. So even when exercised on race-neutral terms (as here) the constitution prohibits the government from deliberately interfering with adult procreation – this is a prophylactic safeguard of the equal protection clause. *See id.*

## Argument and Authorities

### I. The waiver should not bar the appeal

### A.    Standard of Review

This Court reviews *de novo* whether a waiver of appeal bars the appeal. *See United States v. Baymon,* 312 F.3d 725, 727 (5th Cir.2002). "To determine whether an appeal of a sentence is barred by an appeal waiver provision in a plea agreement, [this Court will] conduct a two-step inquiry: (1) whether the waiver was knowing and voluntary and (2) whether the waiver applies to the circumstances at hand, based on the plain language of the agreement." *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005)(citing *United States* v. *McKinney,* 406 F.3d 744, 746–47 (5th Cir.2005)).

### B.    Discussion

*Every* federal circuit with criminal jurisdiction except this one has held that unconstitutional discrimination at sentencing is reviewable in spite of a blanket waiver of appeal.[2] The Seventh Circuit, notably, has named gender discrimination

---

[2] *See United States v. Teeter*, 257 F.3d 14, 25, n.9 (1st Cir. 2001) ("This category is infinitely variable, but, by way of illustration, we would include within it situations in which appellants claim that their sentences were based on constitutionally impermissible factors (say, race or ethnicity), or that the plea proceedings were tainted by ineffective assistance of counsel.")(citing, *inter alia*, United States v. *Brown*, 232 F.3d 399, 403 (4th Cir. 2000); *United States v. Schmidt*, 47 F.3d 188, 190 (7th Cir.1995))(internal citations omitted); *United States v. Johnson*, 347 F.3d 412 (2d Cir. 2003)("we have also held that, when a sentence is based upon a consideration

arguably impermissible under the Constitution, we will read such an agreement narrowly.")(citing *United States v. Rosa*, 123 F.3d 94, 98 (2d Cir. 1997); *United States v. Jacobson*, 15 F.3d 19, 22-23 (2d Cir.1994)); *United States v. Gwinnett*, 483 F.3d 200, 203 (3d Cir. 2007)("After all, 'a sentence based on constitutionally impermissible criteria, such as race, or a sentence in excess of the statutory maximum sentence for the defendant's crime, can be challenged on appeal even if the defendant executed a blanket waiver of his appeal rights.'")(quoting *United States v. Bownes*, 405 F.3d 634, 637 (7th Cir.2005) (internal citations omitted by *Bownes*); *United States v. Marin*, 961 F.2d 493, 496 (4th Cir.1992) "a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court[,] ... a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race."); *United States v. Caruthers*, 458 F.3d 459, 471 (6th Cir. 2006), *abrogated on other grounds by Mathis v. United States*, 579 U.S. 500, 136 S.Ct. 2243,195 L.Ed.2d 604 (2016)("The circuits have been similarly uniform in accepting the principle that defendants who have otherwise waived their appellate rights may yet attack sentences based on constitutionally impermissible criteria like race. The soundness of this rule is incontrovertible, and the fact that it is often paired with the doctrine we consider today lends support to the latter.")(citing *Bownes*, 405 F.3d at 637)(internal citation omitted); *United States v. Schmidt*, 47 F.3d 188, 190 (7th Cir. 1995)("Additionally, despite a valid waiver of the right to appeal, a defendant could appeal his sentence if the trial court relied on a constitutionally impermissible factor such as race or if the court sentenced the defendant above the statutory maximum.")(citing *Marin,* 961 F.2d at 496); *United States v. Andis*, 333 F.3d 886, 894 (8th Cir.2003)(*en banc*)(holding that release conditions would constitute a miscarriage of justice if "they were based on some constitutionally impermissible factor, such as race."); *United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996) ("[T]he waiver of a right to appeal may be subject to certain exceptions such as ... racial disparity in sentencing among codefendants...."); *United States v. Hahn*, 359 F.3d 1315, 1327 (10th Cir. 2004)(en banc)("Appellate waivers are subject to certain exceptions, including [1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful.")(quoting *United States v. Elliott*, 264 F.3d 1171, 1173 (10th Cir. 2001)(citing *United States v. Cockerham*, 237 F.3d 1179, 1182 (10th Cir.2001)); *King v. United States*, 41 F.4th 1363, 1367 (11th Cir. 2022)("We will review a sentence 'based on a constitutionally impermissible factor such as race' notwithstanding a waiver)(quoting *United States v. Bushert*, 997 F.2d 1343, 1350

specifically as a proper ground for appeal in spite of a waiver. *United States v. Hicks*, 129 F.3d 376, 377 (7th Cir. 1997)("…we will not enforce the waiver if the district judge relied on impermissible facts in sentencing (for example, the defendant's race or gender) …."). This Court, moreover, has never held the opposite – it simply hasn't weighed in on the question either way.

The other eleven circuits are correct in holding that an appeal waiver should not bar review of unlawful discrimination in sentencing. This is so for two reasons. First, waiver of review is contrary to public policy when it shields unlawful discrimination. Because "[t]his court applies general principles of contract law in interpreting the terms of a plea agreement," *United States v. Long*, 722 F.3d 257, 262 (5th Cir. 2013), it follows that "[p]lea agreements are subject to the public policy constraints that bear upon the enforcement of other kinds of contracts." *United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995).

"A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the

---

n.18 (11th Cir. 1993)(quotation omitted by *Bushert*); <u>United States v. Guillen</u>, 561 F.3d 527, 531 (D.C. Cir. 2009)("Finally, we note a waiver does not shield from review a sentence colorably alleged to rest upon a constitutionally impermissible factor, such as the defendant's race or religion.")(citing *Hahn*, 359 F.3d at 1327; *Teeter*, 257 F.3d at 25 n. 9; *Brown*, 232 F.3d at 403; *United States v. Michelsen*, 141 F.3d 867, 872 n. 3. (8th Cir. 1998)).

enforcement of such terms." *Restatement (Second) of Contracts* § 178 (1981). "Legislation" for these purposes, includes constitutional provisions, here the equal protection aspect of the due process clause. *Restatement (Second) of Contracts* § 178, comment. a.

Gender discrimination in the criminal justice system is forbidden by the equal protection clause, *see Walley v. Epps*, No. 4:10CV71-DPJ-FKB, 2013 WL 2389790, at *5 (S.D. Miss. May 30, 2013), and by 18 U.S.C. §3553(a)(6); it is also contrary to the clearly expressed policy of both Congress and the Sentencing Commission, *see* 28 U.S.C. §994(d); USSG §5H1.10. Moreover, it inflicts damage to the public interest; as the Court observed in the *Batson* context, gender discrimination invites cynicism toward the fairness and neutrality of the criminal justice system. *See J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 140, 114 S. Ct. 1419, 1427, 128 L. Ed. 2d 89 (1994)(quoting *Powers v. Ohio*, 499 U.S. 400, 412, 111 S.Ct. 1364, 1371, 113 L.Ed.2d 411 (1991)). Thus, the public interest in protecting the solemn American ideal of equal justice under law outweighs the benefit of the appeal waiver to the parties. As the Seventh Circuit observed "because some minimum of civilized procedure is required by community feeling regardless of what the defendant wants or is willing to accept[,] … a sentence based on constitutionally impermissible criteria, such as race …can be challenged on appeal even if the defendant executed a blanket waiver of his appeal rights…" *Bownes*, 405 F.3d at 637 (quoting *United States v.*

*Josefik*, 753 F.2d 585, 588 (7th Cir.1985) and citing *United States v. Hicks*, 129 F.3d 376, 377 (7th Cir.1997); *Johnson*, 347 F.3d at 414–15; *Marin*, 961 F.2d at 496)(internal citations omitted).

It is well-settled in the civil context that "there can be no contract for unlawful discriminatory treatment," *Moses v. Burleigh Cnty.*, 438 N.W.2d 186, 190–91 (N.D. 1989)(citing, *inter alia*, *United States v. Trucking Employers, Inc*., 561 F.2d 313, 319 (C.A.D.C.1977); *U.S.E.E.O.C. v. County of Calumet*, 686 F.2d 1249, 1256 (7th Cir.1982); *Williams v. Vukovich*, 720 F.2d 909, 926 (6th Cir.1983)); *Schwartz v. Florida Board of Regents*, 807 F.2d 901, 906 (11th Cir.1987), at least where that discrimination comes after the formation of the contract. For reasons of public interest, people cannot agree to subject themselves to gender discrimination, even in the private sector. And the criminal context – where the fundamental right to liberty is directly implicated, and where the coercive power of the state is at its zenith – hardly makes the problem of unlawful discrimination less grave.

Second, as a matter of contract interpretation, "both parties to the plea agreement[ ] contemplate[] that all promises made were legal, and that the non-contracting 'party' who implements the agreement (the district judge) will act legally in executing the agreement." *United States v. Leal*, 933 F.3d 426, 431 (5th Cir. 2019)(quoting *United States v. Ready*, 82 F.3d 551, 559 (2d Cir. 1996)). Again, gender discrimina-

tion at sentencing is not lawful. As such, if gender discrimination tainted the sentencing process, the reasonable expectations of the parties were frustrated, and the waiver ought not be enforced. *See Leal*, 933 F.3d at 431 (sentence in excess of the statutory maximum defeated expectations of parties that outcome would be lawful).

But this case does not require this Court to decide whether a waiver of appeal bars review of unlawful discrimination at sentencing generally. Here, there is special reason to avoid the waiver. Here, ***one of the parties*** – the government – itself engaged in unconstitutional gender discrimination.

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.

*Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Because the United States Attorney, a part of the government, has a "compelling" "obligation to govern impartially," it is reasonable for a defendant contemplating a plea agreement to expect that the government will not engage in gender discrimination. *See Restatement (Second) of Contracts* § 205, comment. a (1981)("Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party…"). Unlike discrimination undertaken by the judge, the government's use of the defendant's

gender in formulating a sentencing recommendation breaches an implied term of the contract.

This Court has expressly reserved the question of whether "miscarriages of justice" constitute an exception to appeal waivers. *See United States v. Burns*, 770 F. App'x 187, 191 (5th Cir. 2019)(unpublished)("Burns contends that we could find his waiver unenforceable under a miscarriage of justice exception. This circuit has declined to explicitly adopt or reject this exception.")(citing *United States v. Ford*, 688 F. App'x 309, 309 (5th Cir. 2017)(unpublished), and *United States v. Powell*, 574 F. App'x 390, 394 (5th Cir. 2014)(unpublished)); *see also United States v. Barnes*, 953 F.3d 383, 389 (5th Cir. 2020)("Though some other circuits recognize such an exception, we have declined explicitly either to adopt or to reject it."). Following the overwhelming consensus of the federal circuits, this Court should recognize a limited exception for miscarriages of justice, defined as serious, constitutional, errors that shock the conscience. But it need not reach the issue here, where the government's own conduct contradicts the reasonable expectation of lawful and constitutional conduct in the prosecution.

In April of 2025, this Court declined to apply the miscarriage exception to errors arising under *Davis v. United States*, 588 U.S. 445, 470, 139 S.Ct. 2319, 204 L.Ed.2d 757 (2019). *See United States v. Jones*, 134 F.4th 831 (5th Cir. 2025). It held that the miscarriage exception does not apply to every "illegal sentence," believing

that this would eliminate the value of the waiver to the government in virtually every case. *See Jones*, 134 F.4th at 841 ("If the alleged illegality of sentences and convictions became the limiting principle, then appeal and collateral-review waivers would serve little to no purpose."). That case does not prevent relief here for two reasons. First, there is no need to adopt a general exception for miscarriages of justice, but only to join the otherwise universal consensus that they cannot shield the practice of unconstitutional discrimination in the sentencing process. Second, and more importantly, the error under review was committed by the government, a party to the agreement, rather than the court.

## II. The government plainly erred in considering the defendant's sex as an aggravating factor when formulating a sentencing recommendation.

### A.    Standard of Review

Unpreserved error is reversed when: 1) there is error, 2) that is clear or obvious, 3) that affects substantial rights, and 4) affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 502 U.S. 725, 732 (1993).

### B.    Discussion

The Fourteenth Amendment to the United States Constitution prohibits gender discrimination by the States. U.S. Const. Amend. XIV, Sec. 1. "In numerous decisions, th[e Supreme] Court 'has held that the Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws.'" *Davis v. Passman*, 442 U.S. 228, 234, 99 S. Ct. 2264, 2271, 60 L. Ed. 2d 846

(1979)(quoting *Vance v. Bradley*, 440 U.S. 93, 95 n. 1, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979)(citing *Hampton v. Mow Sun Wong*, 426 U.S. 88, 100, 96 S.Ct. 1895, 1903, 48 L.Ed.2d 495 (1976); *Buckley v. Valeo*, 424 U.S. 1, 93, 96 S.Ct. 612, 670, 46 L.Ed.2d 659 (1976); *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 1228, 43 L.Ed.2d 514 (1975); *Bolling v. Sharpe*, 347 U.S. 497, 500, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954)). "To withstand scrutiny under the equal protection component of the Fifth Amendment's Due Process Clause, 'classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives.'" *Davis*, 442 U.S. at 234–35, 99 S. Ct. at 2271 (quoting *Califano v. Webster*, 430 U.S. 313, 316–317, 97 S.Ct. 1192, 1194, 51 L.Ed.2d 360 (1977), quoting *Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976)).

"While no United States Supreme Court case has specifically held as such, the Supreme Court's Fourteenth Amendment jurisprudence in the area of discrimination in the criminal process leaves no doubt that sex-based discrimination in sentencing is unconstitutional." *Walley v. Epps*, No. 4:10CV71-DPJ-FKB, 2013 WL 2389790, at *5 (S.D. Miss. May 30, 2013)(citing *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127 (1994) (intentional discrimination on basis of sex in jury selection violates of Equal Protection Clause); *Batson v. Kentucky,* 476 U.S. 79, 88 (1986) ("the Fourteenth

Amendment protects an accused throughout the proceedings bringing him to justice")).

Non-constitutional authority is to the same effect. Congress has instructed the Sentencing Commission to ensure that the Guidelines and policy statements "are entirely neutral as to the race, sex, national origin, creed, and socioeconomic status of offenders." 28 U.S.C. §994(d). The Commission has likewise said that these factors are not relevant in the determination of a sentence. USSG §5H1.10. And speaking directly to the district court, Congress has instructed the court "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. §3553(a)(6).

Unsurprisingly, the Supreme Court has recognized that the prohibition on invidious discrimination extends to the government's sentencing recommendations. *See Wade v. United States*, 504 U.S. 181, 185–86, 112 S. Ct. 1840, 1843–44, 118 L. Ed. 2d 524 (1992). In *Wade*, a case involving "5K" motions for a below-range sentence, the Supreme Court "agree[d] that a prosecutor's discretion when exercising that power is subject to constitutional limitations," and that "a defendant would be entitled to relief if a prosecutor refused to file a substantial-assistance motion, say, because of the defendant's race or religion." *Wade*, 504 U.S. at  185–86, 112 S. Ct. at 1843–44. And of course, this only stands to reason: if the district court cannot

discriminate on the basis of factors like race, sex, or religion, we wouldn't expect that the prosecutor could ask it to do so.

For the purposes of the equal protection clause, and Congressional sentencing policy regarding non-discrimination, the government's recommendation for a sentence at the statutory maximum does not differ meaningfully from its decision to file or withhold a motion for reduced sentence. Both decisions involve the position taken by the government regarding the proper sentence. Obviously both involve state action, and neither the constitution nor any of the relevant statutes distinguish between a motion to sentence below the Guidelines and a request to sentence at the statutory maximum.

The government here requested a sentence of 360 months, the statutory maximum, and its commendably transparent sentencing presentation makes clear that it chose that recommendation in part because of the defendant's sex. *See* (ROA.109-113). Explaining its request for a sentence at the statutory maximum, the government named two factors that made the case shocking, and said that they made the case "more aggravating not less." (ROA.110).

First, it named "the actual facts of what Ms. Hamilton did." These are of course proper considerations for sentencing. But the government continued, naming another factor in addition to "what Ms. Hamilton did": who she was, and what society expected of her. The government said that the offense was "shocking," -- and,

recall, that it said the offense's shocking features made it "more aggravating not less," -- because people expected young women to be more protective of children than men:

> That's shocking enough. **But what makes this more shocking--** and we discussed this in length at our response to the defendant's motion for a downward variance. But **as a young female, one can already assume that women probably should have a more nurturing, more protective feeling towards children than maybe men do. I think that's a societal assumption**. Whether it's true or not, that is probably why, when people go to daycares or hire daycare workers, they think women may be a safer fit.
>
> **Despite being a young female, she had no thought but to attempt to make money somehow by sexually abusing these young female children**. She was apparently abused herself, something that, again, the research and literature would say makes most abuse victims more protective of children, and more cautious. And despite that, she caused what will probably be life-long issues and implications for these two young children, as well as their families.

(ROA.110-111)(emphasis added).

It is no answer that the defendant and male sex offenders are in fact differently situated on the grounds articulated by government. Differential treatment of men and women is sometimes permissible when they are differently situated; the government may justify such discrimination by showing that it is substantially related to an important governmental interest. *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 724, 102 S. Ct. 3331, 3336, 73 L. Ed. 2d 1090 (1982). This test, however, "must be applied free of fixed notions concerning the roles and abilities of males and females." *Hogan*, 458 U.S. at 724–25.

Here, the government's grounds for distinguishing between men and women were not "free of fixed notions concerning the roles and abilities of males and females." Id. Obviously, anyone who committed Ms. Hamilton's crime would be due severe punishment, male or female. The government thought it "more aggravating," however, that  Ms. Hamilton committed this act while a young female, because young females are believed by society in general to be more protective of children. See (ROA.110-111). That rationale relies directly and explicitly on different "notions concerning the roles and abilities of males and females."

True, the government did not refer to its own belief regarding the roles and nature of men and women, but to societal expectations regarding those roles. It remains the case, however, that the government's sentencing recommendation was based on gender stereotypes, even if they were not those of the prosecuting attorney herself. Sex-based classifications tend to "perpetuate the stereotyped views" regarding the roles of men and women, in violation of the equal protection clause, and the present case is no exception. *Hogan*, 458 U.S. at 729.

The prosecutor continued with other grounds for a sentence at the statutory maximum that were inextricably intertwined with the defendant's sex. The court should impose the maximum sentence, the prosecutor explained, to ensure that she would not be biologically capable of reproducing when she left prison:

> While **I am not going to try to weigh in on female biology** and at what point Ms. Hamilton may or may not be able to have children

anymore, **but by my calculation, at twenty-one  years of age today, a 30-year sentence may be the best way to prevent Ms. Hamilton from being able to have her own children**, because if she was willing to do this with two children she was protecting, or supposed to be protecting, in her position as a daycare worker, there's no telling what she would do behind closed doors with her own children.

Your Honor, **for all of these reasons, the United States asks for a sentence at the statutory maximum of 360 months**, followed by a lengthy term of supervised release.

(ROA.112)(emphasis added).

While the government may certainly remove children from the homes of dangerous parents, it cannot use prison as a means to prevent their ***biological*** reproduction. *See Skinner v. State of Okl. ex rel. Williamson*, 316 U.S. 535, 541, 62 S. Ct. 1110, 1113, 86 L. Ed. 1655 (1942)(government cannot be trusted with power to decide who may reproduce). In the view of the Supreme Court, the government is denied this power in order to guarantee equal protection of the laws. The Court has explained that "[t]he power to sterilize, if exercised, may have subtle, farreaching and devastating effects," and that "[i]n evil or reckless hands [this power] can cause races or types which are inimical to the dominant group to wither and disappear." *Skinner*, 316 U.S. at 541. Thus, as a safeguard to equal protection, the government may not intentionally prevent its adult citizens from reproducing, even if it thinks doing so in the public interest. *See id.*

## 2.     The error is clear or obvious

An error is clear or obvious if it is not subject to reasonable dispute. A district court in the Southern District of Mississippi, bound by the precedent of this Court, concluded that "the Supreme Court's Fourteenth Amendment jurisprudence in the area of discrimination in the criminal process **leaves no doubt** that sex-based discrimination in sentencing is unconstitutional." *Walley*, 2013 WL 2389790, at *5 (emphasis added). This proposition is accordingly not subject to reasonable dispute.

The Supreme Court, moreover, has acknowledged that defendants may challenge the sentencing recommendations of the government if they come from invidious discrimination. *See Wade*, 504 U.S. at 185–86, 112 S. Ct. at 1843–44. Although the case arises in the 5K context – where the government moves for a reduced sentence to compensate for substantial assistance – there is no reasonable distinction between the sentencing recommendation here and a 5K. As discussed above, both involve state action regulated by the due process clause; both involve recommendations for sentencing, in which context both constitutional and non-constitutional authority forbid gender discrimination.

Finally, there is no reasonable reading of the government's sentencing argument that does not request a higher sentence on the grounds of sex. Moreover, the government made clear that these same grounds informed its choice to request a

sentence at the statutory maximum. This is simply the literal and inevitable meaning of the words chosen by the government.

The government said the facts that made the case shocking made it "more aggravating not less," (ROA.110), which communicates, inevitably, that these "shocking" facts call for a higher sentence. The government also explicitly named the defendant's sex as a factor that made the case more "shocking," in addition to "the actual facts of what Ms. Hamilton did." The defendant's sex made the case more aggravating, the government explained because "one can already assume that women probably should have a more nurturing, more protective feeling towards children than maybe men do." (ROA.110). It continued, positing that this belief in a "more nurturing, more protective feeling" among women caused people to entrust their children to women in daycare. (ROA.110). And it lamented that the defendant committed the offense "despite being a young female." (ROA.110-111). The government then expressly requested a sentence of 30 years to prevent Ms. Hamilton from reproducing biologically, again linking its sentencing recommendation to a factor that ran afoul of equal protection constraints. *See* (ROA.112). Then, to eliminate any question about whether the arguments made at sentencing caused it to make a recommendation of 360 months, the prosecutor said, "**for all of these reasons**, the United States asks for a sentence at the statutory maximum of 360 months." (ROA.113).

The problematic statements were not a slip of the tongue – they formed a well-considered argument, consistently propounded, and explicitly linked to the government's decision to seek a sentence of 360 months. No doubt, this argument was made in good faith, but it simply overlooked the legal constraints on gender discrimination.

### 3.     The error affected substantial rights

The district court followed the government's recommendation – 360 months – exactly. And its comments show at least a reasonable probability that the government's sentencing recommendation affected the outcome. Echoing the government's description of the case as "shocking" because it involved an unlikely defendant, the court said, "this is an unusual case." (ROA.116). It said that the defendant had "abused th[e] trust" of the parents who entrusted their children to the daycare facility. (ROA.118). That is true, of course, and would be true even if the defendant had been a man, but the government's argument had suggested that a greater breach of trust occurred because she was a woman. Further, the court said that it rejected the defendant's request for a lesser sentence "given the purposes of sentencing and the parties arguments and all the parties filings." (ROA.118). As noted, the government's sentencing argument leaned heavily on the defendant's gender.

But even if the district court had said nothing at all, the mere fact of a government recommendation has a probable effect on the outcome. The sentencing recom-

mendation of the government, like the Guidelines, has a strong empirical relationship with the outcome. *See* Jeffrey J. Rachlinski and Magistrate Judge Andrew J. Wistrich, *Judging the Judiciary by the Numbers: Empirical Research on Judges* 13 Annual Review of Law and Social Science 17 (2017) ("…the correlation between the prosecutors' recommendations and judges' sentences is so strong that it is hard to imagine that the recommendation has no independent influence."); *Molina-Martinez v. United States*, 578 U.S. 189, 199–200, 136 S. Ct. 1338, 1346, 194 L. Ed. 2d 444 (2016)(quoting *Peugh v. United States*, 569 U.S. 530, 133 S.Ct. 2072, 186 L.Ed.2d 84 (2013))(Guideline error ordinarily sufficient to show reasonable probability of a different result because "there is 'considerable empirical evidence indicating that the Sentencing Guidelines have the intended effect of influencing the sentences imposed by judges.'").

Indeed, the Federal Rules of Criminal Procedure recognize the presumptive value of a government recommendation, permitting the defendant to bargain away his or her sacred right to trial by jury in exchange for a favorable recommendation of the prosecution. *See* Fed. R. Crim. P. 11(c)(1)(B). At a minimum, a district court may take the government's recommendation as a higher limit for the sentence; when prosecutors -- charged with the duty to enforce the law and protect the public -- suggest a particular sentence, the district court may ordinarily assume that it is sufficient to meet the ends of sentencing.

Finally, though not conclusive, it is certainly probative that the district court did what the government recommended.

To obtain relief on plain error, the defendant must show a reasonable probability of a different result in the absence of a court's mistake. *See United States v. Dominguez-Benitez*, 542 U.S. 74, 83, n. 9, 124 S.Ct. 2333, 2340, 159 L.Ed.2d 157 (2004). "The reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different." *Dominguez Benitez*, 542 U.S. at 83. Taken together, the comments of the district court, the fact that the court followed the government's recommendation exactly, and the natural tendency of the government's recommendation to affect the outcome satisfy this standard.

Finally, even if the error did not actually change the sentence imposed, this Court should still grant relief. In the ordinary case, a plain error must affect the outcome of the case to affect substantial rights. *See Olano*, 502 U.S. at 734. Some errors, however, are treated as structural, eliminating the need for this showing. *See Neder v. United States*, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). The presence of a biased decision-maker is among these classes of structural error. *See Neder*, 527 U.S. at 8, 119 S.Ct. 1827 (holding that the presence of a biased decisionmaker is

structural error "subject to automatic reversal"). A prosecutor making charging de-cisions, sentencing recommendations, and plea offers, no less than a judge, jury, or grand jury, is an influential "decision-maker" in the course of the defendant's case.

**4.      The error affects the fairness, integrity, and public reputation of judicial proceedings.**

As the Supreme Court has recognized in the context of *Batson* challenges, invidious discrimination ***by the litigants*** has effects that reach beyond any individual case. *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 140, 114 S. Ct. 1419, 1427, 128 L. Ed. 2d 89 (1994)("Because these stereotypes have wreaked injustice in so many other spheres of our country's public life, active discrimination by litigants on the basis of gender during jury selection "invites cynicism respecting the jury's neutral-ity and its obligation to adhere to the law.")(quoting *Powers v. Ohio*, 499 U.S. 400, 412, 111 S.Ct. 1364, 1371, 113 L.Ed.2d 411 (1991)). When the prosecutor considers gender in formulating a sentencing recommendation, it may normalize the use of gender stereotypes in matters of public concern and invite cynicism regarding the willingness of the executive to protect the rights of all citizens equally. And while a "miscarriage of justice" is no longer necessary to relief on plain error, *see Rosales-Mireles v. United States*, 585 U.S. 129, 137, 138 S. Ct. 1897, 1906, 201 L. Ed. 2d 376 (2018), it is significant that most circuits applying a miscarriage exception to appeal waivers treat invidious discrimination as the prototypical example, *see* Note

2, *supra*. The goal of equal treatment under law is an essential value in the American legal system and political order; when it is undermined, the error should be corrected.

## Conclusion

Appellant asks this Court to vacate the sentence and remand for further proceedings.

Respectfully submitted,

JASON D. HAWKINS
FEDERAL PUBLIC DEFENDER

/s/ Kevin Joel Page
KEVIN JOEL PAGE
ASSISTANT FEDERAL PUBLIC DEFENDER
525 South Griffin
Suite 629
Dallas, Texas 75202
(214) 767-2746

*Counsel for Appellant*

## Certificate of Service

On July 31, 2025, I filed this Brief through the Court's ECF system. Opposing Counsel has therefore been served. Further I certify that our office will send a paper copy to Ms. Hamilton unless she requests not to receive one.

/s/ Kevin Joel Page

## Certificate of Compliance

This brief complies with the type-volume limitations of FED. R. APP. P. 32(a)(7)(B) because it contains 7,370 words excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii). The brief was prepared using MS Word, Times New Roman 14-point font, with footnotes in 12-point font.

/s/ Kevin Joel Page